UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Natureview Vista Twinhome Association, | File No. 22-cv-2027 (ECT/DJF) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| The Travelers Indemnity Company, | |
| Defendant. | |

_____

Justice Ericson Lindell and Mihajlo Babovic, Greenstein Sellers PLLC, Minneapolis, MN, for Plaintiff Natureview Vista Twinhome Association.

Joel T. Wiegert and Anju Suresh, Hinshaw & Culbertson LLP, Minneapolis, MN, and Alexander J. Bialk and Matthew S. Ponzi, Foran Glennon Palandech Ponzi & Rudloff PC, Chicago, IL, for Defendant The Travelers Indemnity Company.

_____

Plaintiff Natureview Vista Twinhome Association, a homeowners' association with twenty-seven buildings in Brooklyn Park, Minnesota, suffered property damage in an August 2019 hailstorm and submitted a claim to its insurer, Defendant The Travelers Indemnity Company. Natureview brought this case to recover additional amounts it claims Travelers owes under the policy. Before this case was filed, the parties participated in an appraisal process to resolve their disagreement over the value of Natureview's storm-damage claim. Based on the appraisal award and having completed the repairs, Natureview requests (1) payment for the recoverable depreciation[1] awarded by the appraisal panel;

---

[1] Recoverable depreciation is the difference between the actual-cash value (or "ACV") and replacement-cost value (or "RCV") of the covered loss.

(2) reimbursement for the cost to replace undamaged, non-color-matching siding on the north and south elevations of Natureview's buildings; and (3) pre-award interest. The parties have both moved for summary judgment.

Travelers' motion will be mostly granted and Natureview's motion will be denied. Natureview will not be awarded any recoverable depreciation because there is no genuine dispute of material fact that Natureview did not actually and necessarily spend more than the actual-cost value of the loss, a policy requirement. And Natureview is not entitled to pre-award interest because it filed this action more than two years after its written notice of claim to Travelers. The parties' summary-judgment motions will be denied as to matching costs for the north and south elevations because the appraisal panel's award and subsequent clarification are ambiguous.

I

A hailstorm on August 5, 2019, caused property damage to Natureview's buildings. Compl. [ECF No. 1-1] ¶ 9; ECF No. 46-1 at 4.[2] At the time, the buildings were insured under a Travelers policy that covered the replacement cost of this type of loss. ECF No. 48-1 at 3 (covered locations), 7 (policy period). The policy requires Travelers to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss." *Id.* at 34. The policy covers Natureview's twenty-seven buildings, containing fifty-eight individual units, located in Brooklyn Park, Minnesota. *Id.* at 3.

---

[2]   Page cites are to CM/ECF pagination appearing in a document's upper right corner, not to a document's original pagination.

2

On August 6, Natureview notified Travelers of the loss.  ECF No. 49 ¶ 5.  Travelers inspected the property in August and completed an initial repair estimate for the damage in September.  *Id.* ¶¶ 6–10.

On September 4, Natureview entered into an agreement with Tyther Contracting to repair or replace property damaged by the storm.  ECF No. 51-1 at 1.  Tyther agreed "to complete the replacement of damaged property for the scope and price provided on the insurance loss statement and agreed to by Tyther . . . with <u>no additional cost to you except for the insurance deductible</u>."  *Id.*

On September 30, Tyther sent Travelers an estimate to repair the damage.  ECF No. 49 ¶ 11.  Travelers responded by sending a statement of loss on October 3 that estimated the ACV of the loss at $180,812.64 and the RCV at $189,292.73.  ECF No. 48-8 at 2.  Because the policy had a hail deductible for two percent of the value of the damaged property that Travelers calculated in the amount of $469,074.90, *see* ECF No. 48-1 at 14–15; ECF No. 48-8 at 3, Travelers did not make any insurance payment to Natureview in October 2019, ECF No. 48-8 at 2.

Natureview retained a public adjuster to assist with its claim.  ECF No. 48-10.  On February 6, 2020, the public adjuster sent Travelers an updated repair estimate, calculating the RCV at $2,780,842.20.  ECF No. 48-11; ECF No. 49 ¶ 13.  After additional inspections, Travelers provided Natureview with a revised statement of loss on June 15.  ECF No. 49 ¶ 14; ECF No. 48-12 at 2.  Travelers' revised statement of loss calculated the ACV of the loss at $422,887.01 and the RCV at $529,397.52.  ECF No. 48-12 at 2.  Because the ACV

remained less than the hail deductible, Travelers did not issue an insurance payment to Natureview in June 2020.

Because Natureview disagreed with Travelers' estimate of the loss, it requested an appraisal on July 15.  ECF No. 48-13.  Before Travelers would proceed with the appraisal, it requested an itemized estimate, executed proof of loss, and supporting documentation. ECF No. 48-6 at 4.  The public adjuster emailed a proof of loss and final estimate to Travelers on August 18.  ECF No. 42-1.[3]  In October, the parties agreed to a "Memorandum of Appraisal."  ECF No. 48-16.  This memorandum directed the appraisal panel to determine: "(a) causation (i.e. whether the alleged damage was caused by the event[)]; (b) the cost to repair or replace the damage to the Property; and (c) Matching; as further described below."  ECF No. 48-16 ¶ 7.  The memorandum described matching as follows:

> The appraisal award shall state separately whether any of the building components are subject to Matching.  For purposes of this appraisal, "Matching" arises when the original material for a component of the building that requires repairs is no longer available on the market.  Under those circumstances, the appraisers are to determine whether there is material available on the market that allow for repairs to be completed to the undamaged area of the building component that results in a reasonable and uniform appearance.  If there is no material available on the market that reasonably matches the undamaged area of the building component, the appraisers are to evaluate the extent of the mismatch between the undamaged area of the building component and the new material used for the repairs taking into account the existence of prior repairs and/or mismatches.

---

[3] It appears that Travelers made an initial payment of $7,489.08 on September 1, 2020. ECF No. 48-17 at 4.  The basis for this payment is not clear from the record.

4

*Id.* ¶ 8. The appraisal panel issued a final, itemized award in January 2022. ECF No. 48-2 at 5. The appraisal panel determined the ACV of the loss to be $1,210,160.00 and the RCV to be $1,564,992.00. *Id.* The award included repairs to the roofs, vents, garage doors, gutters, windows, HVAC, decks, fascia, and siding of Natureview's buildings. *Id.*

The appraisal panel issued a one-page document titled "CLARIFICATIONS" to address matching. ECF No. 48-2 at 4. At the top of the page, the appraisal panel wrote, "[t]his clarification is to answer questions of the [memorandum] as acknowledged by both sides. The panel did not define coverage. The dollar amounts indicated on this page are not a part of the award and relate to the issues of matching." *Id.* The appraisal panel found that (1) the west elevation of the buildings had been replaced with non-matching siding in 2017; (2) the 2019 hailstorm damaged siding on the west and south elevations; and (3) the replacement of individual damaged pieces of siding on the south side would not result in a reasonable match. *Id.* The appraisal panel explained that the "south elevations award amount . . . is to replace the buildings [sic] original siding with . . . the same siding that is on the west elevations," and "[t]he award for the west side is based on a repair to replace individual damaged pieces of siding that were available at the time of the loss." *Id.* Finally, the appraisal panel concluded that "[t]he remaining undamaged original siding on the east and north elevations has a replacement cost of $502,942.00 and an ACV or [sic] $0.00." *Id.*

In May, Natureview requested further clarification from the appraisal panel, asking the umpire if the appraisal panel's clarification "is intended to convey that the siding on the North and East elevations is not a reasonable match, and that the panel awarded RCV

of $502,942.00 for siding replacement on the North and East elevations if matching is covered." ECF No. 55-3 at 4. The umpire responded on behalf of the panel in an email as follows:

> The panel did not make coverage decisions or interoperate [sic] case law. The panel also did not make an award for matching the North and East elevations. Page one of the appraisal award form represents the amount of the award. Page two represents the clarifications. Item 4 indicates an RCV amount of $502,942 RCV for complete replacement of the North and East elevations if matching is considered. . . . The award allowed for the complete replacement of the South elevation which would then match the West elevations but would not match the North or East elevations.

*Id.*

On January 31, 2022, Travelers paid $733,042.16 to Natureview's public adjuster. ECF No. 48-17 at 4. This amount reflected the appraisal panel's ACV award minus the hail deductible and the $7,489.08 payment in September 2020. *Id.* at 4–5. The public adjuster retained $195,694.00 as his fee and disbursed the remaining $537,418.16 to Natureview. *Id.*

Tyther is a general contractor, ECF No. 46-2 at 6, and it hired subcontractors to perform the repairs. *Id.* at 5–6. Tyther repaired the windows in 2019, but only started the rest of the repairs in early 2022 after the appraisal panel issued its award. *Id.* at 13. Although the appraisal panel awarded roughly $40,000 to repair or replace fascia damaged by the storm, Natureview decided to keep the ACV payment instead of repairing the damaged fascia. *Id.* at 15. Except for the fascia, Tyther completed the repairs by the end

of 2022. *Id.* at 23. Tyther also replaced some, but not all, of the undamaged siding on the north and east elevations. *Id.* at 28.

As Tyther completed the work, Natureview issued payments. It paid Tyther $496.698.13 in May 2022, $24,382.00 in June 2022, $236,541.75 in July 2022, $152,500.00 in November 2022, and $93,420.39 in April 2023. ECF No. 48-17 at 4–5. Natureview's payments to Tyther totaled roughly $1,000,000. In July 2022, Tyther sent Natureview an undated invoice for the RCV amount listed in the appraisal award. ECF No. 46 ¶ 7; ECF No. 46-2 at 24–25; ECF No. 46-5. This invoice was never paid, although Natureview claims it owes Tyther $343,543.98. ECF No. 48-17 at 5; ECF No. 56 at 3.

Natureview brought this case on July 18, 2022, originally in state court. Travelers removed the case to federal court based on diversity jurisdiction. ECF No. 1. Natureview asserts two claims in its Complaint—a claim for breach of contract in Count I, Compl. ¶¶ 15–19, and a claim for a declaratory judgment in Count II, *id.* ¶¶ 20–25. Natureview seeks $343,543.98, the recoverable depreciation awarded by the appraisal panel (excluding the RCV of the damaged fascia), ECF No. 56 at 3, the $502,942.00 RCV amount described in the appraisal panel's clarification as the cost to replace the undamaged siding on the north and east elevations of Natureview's buildings, ECF No. 41 at 2, and pre-award interest, *id*.

II

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if its resolution might affect the outcome

7

of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255. A "smoking gun" is not required for the non-movant to defeat a summary judgment motion. *Teleconnect Co. v. Ensrud*, 55 F.3d 357, 360 (8th Cir. 1995). But the non-movant must show "more than mere speculation, conjecture, or fantasy." *Clay v. Credit Bureau Enters., Inc.*, 754 F.3d 535, 539 (8th Cir. 2014) (citation and quotations omitted); *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 714 (8th Cir. 2019).

III

A

Natureview claims that Travelers breached the policy by failing to pay the recoverable depreciation plus permits awarded by the appraisal award, totaling $343,543.98. ECF No. 56 at 3. Under Minnesota law, a breach-of-contract claim requires: "(1) a valid contract; (2) performance by the plaintiff of any conditions precedent; (3) a material breach of the contract by the defendant; and (4) damages." *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 989 (D. Minn. 2006) (citation omitted); *see Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011) (same).

Deciding whether Travelers breached the policy requires interpreting the policy. "The interpretation of insurance contracts is a question of law." *Quade v. Secura Ins.*, 814 N.W.2d 703, 705 (Minn. 2012). "Subject to the statutory law of the state, a policy of insurance is within the application of general principles of the law of contracts." *Id.*

(quoting *Bobich v. Oja,* 104 N.W.2d 19, 24 (Minn. 1960)). "When interpreting insurance contracts, the policy must be construed as a whole, beginning with the plain and ordinary meaning of the policy's terms, as well as 'what a reasonable person in the position of the insured would have understood the words to mean.'" *Cedar Bluff Townhome Condo. Ass'n v. Am. Fam. Mut. Ins.*, 857 N.W.2d 290, 294 (Minn. 2014) (quoting *Midwest Fam. Mut. Ins. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013)).

> The parties' dispute concerns the following policy term:
>
>> (c) We will not pay more for loss or damage on a replacement cost basis than the least of Paragraphs (i), (ii), or (iii) . . . :
>>
>>> (i) The Limit of Insurance applicable to the lost or damaged property;
>>>
>>> (ii) The cost to replace the lost or damaged property with other property:
>>>
>>>> a) Of comparable material and quality; and
>>>>
>>>> b) Used for the same purpose; or
>>>
>>> (iii) The amount actually spent that is necessary to repair or replace the lost or damaged property.

ECF No. 48-1 at 62. The parties agree that the appraisal award is less than the applicable insurance limit and that the appraisal award establishes the "cost to replace" described in paragraph (c)(ii). The parties' disagreement concerns paragraph (c)(iii).

Natureview contends that it "has completed the repairs and therefore is entitled to judgment for the replacement cash value ("RCV") of the loss plus its permits incurred pursuant to the Award and the Policy." ECF No. 41 at 1. Not so. Because the appraisal award establishes the cost to replace described in paragraph (c)(ii), Natureview is entitled

9

to "[t]he amount actually spent that is necessary to repair or replace the lost or damaged property," so long as that amount is less than or equal to the RCV amount awarded by the appraisal panel. ECF No. 48-1 at 62. In other words, Natureview must "repair and replace the property **and** expend an amount in excess of the agreed cash value of the loss." *Kolls v. Aetna Cas. & Sur. Co.*, 503 F.2d 569, 571 (8th Cir. 1974) (emphasis added); *see also* Jordan R. Plitt et. al, *Couch on Insurance* § 176:60 (3d ed. Nov. 2023 Update) ("Thus, it has been stated that, before replacement costs could be recovered, the insured must repair or replace the damaged structure and spend an amount greater than that recoverable under actual cash value."); *Estes v. State Farm Fire & Cas. Co.*, 358 N.W.2d 123, 124–25 (Minn. Ct. App. 1984) (insured who repaired a roof for $13,000 was only entitled to $13,000, not the full RCV).

A hypothetical is illustrative. Suppose an insured's roof is destroyed by a storm. The roof has a replacement-cost value of $40,000 and (accounting for depreciation) an actual-cash value of $20,000. If the insured does not replace the roof, the insured keeps the $20,000 ACV payment. If the insured replaces the roof, the insured can then request reimbursement for the cost of replacing the roof that exceeds the ACV, up to the RCV. So if the insured paid $20,000 to replace the roof, the insurer would owe nothing; if the insured paid $30,000, the insurer would owe $10,000; if the insured paid $40,000, the insurer would owe $20,000, and if the insured paid $50,000, the insurer would still only owe $20,000. *Selective Ins. Co. of S.C. v. Sela*, 455 F. Supp. 3d 841, 844 (D. Minn. 2020), *aff'd,* 11 F.4th 844 (8th Cir. 2021). Because paragraph (c)(iii) reimburses an insured for money spent, the insured must ordinarily spend the money first. But as a practical matter,

10

bona fide charges for completed work would also seem sufficient. Here, Natureview paid Tyther roughly $1,000,000 for repairs, less than the ACV awarded by the appraisal panel.[4] Because Natureview has not spent more than the ACV amount, it is not entitled to reimbursement for any recoverable depreciation.

Natureview counters that "pursuant to the invoice generated by Tyther, Natureview has incurred total costs for the work completed (excluding the matching siding) in the total amount of the Award of $1,564,992.00 plus permits." ECF No. 56 at 3. To support its position, Natureview relies almost exclusively on *Savanna Grove Coach Homeowners' Ass'n v. Auto-Owners Ins.*, No. 19-cv-1513 (ECT/TNL), 2020 WL 468905, at *5 (D. Minn. Jan. 29, 2020). ECF No. 54 at 2–7. But in that case, the insured submitted an extensive record showing "that [it] actually and necessarily incurred an amount greater than the appraisal award to repair or replace its damaged property." *Savanna Grove*, 2020 WL 468905, at *5. In *Savannah Grove*, the insurer asserted that the final invoice was simply pegged to the appraisal award, but didn't "say why, or cite evidence showing this is so."

---

[4] Natureview contends that its public adjuster's fee should be included in the amount spent because "[b]oth Natureview and Tyther testified to their agreement that paying the public adjuster became Tyther's obligation, and thus Natureview's satisfaction of Tyther's obligation was functionally no different from Natureview writing a check to Tyther for the same amount." ECF No. 56 at 4. But it is not obvious why payments to a public adjuster are "necessary to repair or replace the lost or damaged property." Natureview cites no legal authority to support its conclusion that paragraph (c)(iii) requires insurers to reimburse an insured's fee paid to its public adjuster. Nor has research turned up any cases supporting Natureview's position. Based on the plain language of the insurance policy, the better answer is that amounts spent to resolve an insurance claim—for example, money paid to attorneys, public adjusters, or appraisers—are different than amounts spent to repair or replace damaged property. Therefore, whether Tyther agreed to absorb the public adjuster's fee is not a material dispute.

11

*Id.* at *7. By contrast, Judge Nelson rejected a request for payment of recoverable depreciation based on an invoice in *Maplebrook Estates Homeowner's Association, Inc. v. Hartford Fire Insurance Co.*, No. 21-cv-1532 (SRN/DJF), 2024 WL 869069 (D. Minn. Feb. 29, 2024). In *Maplebrook*, Judge Nelson reasoned:

> [W]hile Judge Tostrud found that the record submitted by the plaintiff in *Savannah Grove* was "extensive," 2020 WL 468905 at *5, the same cannot be said for Maplebrook's record. The December 13, 2021 invoice contains essentially no information about what work is being invoiced, saying only that it was for "All repair as outlined in the adjusters summary and appraisal award[.]" (Dec. 13, 2020 Capital Invoice.) No witnesses could identify the specific work to which the final invoice corresponded, although Mr. Pierce believed that it concerned "deck painting and [] HVAC" work. Mr. Muelken stated that he did not have any involvement in coming up with the invoice amount, even though he was the representative of the contractor performing the work, and that "[the invoice] was requested from Gavnat so they can have that to submit to the carrier." Together, the evidence suggests that, as the defendant in *Savannah Grove* posited, the December 13, 2021 invoice was not for work performed but rather simply pegged to match the Award.

*Id.* at *21 (citations omitted).

This case is comparable to *Maplebrook*, not *Savanna Grove*. The date on Tyther's invoice is blank, although it is timestamped July 27, 2022. ECF No. 46-5; ECF No. 46-2 at 24 ("Let's see what the date is on there. Okay. Didn't date it."). Tyther only generated the invoice because "we were worried about . . . the totaling agreement running out,"[5] ECF No. 46-2 at 24, and as a Tyther employee put it, "you don't want to leave money on the table . . . if you're concerned." ECF No. 46-2 at 25. The invoice is not itemized and

---

5   It is not clear what "the totaling agreement" is.

describes no work performed.  *See* ECF No. 46-5.  The invoice expressly ties the amount sought to the appraisal award, calculating the remaining amount Natureview owed as the recoverable depreciation awarded by the appraisal panel.  *Id.*  The invoice cannot be reasonably considered final because it was issued months before the repairs were completed.  ECF No. 46-2 at 23.  And unlike the plaintiff in *Savannah Grove*, Natureview offers no evidence linking the work performed to the amount sought in the invoice.  To the contrary, Natureview has not disputed Travelers' filings demonstrating that Tyther expended less than $800,000 on the repairs.  And because Tyther performed all of its work through subcontractors, *see* ECF No. 46-2 at 5–6, Tyther has been more than fairly compensated for its work even after accounting for 10% profit and 10% overhead.  *Cf. Cent. Mut. Ins. v. White Stone Props., Ltd.*, No. A-12-CA-275-SS, 2014 WL 1092121, at *6–9 (W.D. Tex. Mar. 19, 2014) (rejecting a request for recoverable depreciation by examining overhead, profit, and work performed by subcontractors).

Natureview also argues that "[t]here is no genuine dispute that Natureview agreed to pay the entire RCV of the Award plus permits to Tyther in exchange for completing the repairs."  ECF No. 54 at 6.  But Tyther only agreed to "complete the replacement of damaged property for the scope and price provided on the insurance loss statement." ECF No. 51-1.  It did not agree to perform the work for a specific price.  And the contract expressly warrants that Natureview will be subject to no additional costs except for its insurance deductible.  *Id.*  Moreover, the contract is subject to Travelers' payment terms. *Id.*  If a contract alone could satisfy paragraph (c)(iii), Natureview's contract with Tyther does not independently obligate Natureview to pay the RCV amount identified by the

13

itemized appraisal award. Natureview's reliance on an affidavit and deposition testimony does not change things. Jeff Sowden, a member of Natureview's board of directors, stated in an affidavit that because Tyther completed the repairs, "[Natureview] therefore owes Tyther the remainder of the contract amount of $351,205.73." ECF No. 48-17 at 5. And a Tyther employee testified in his deposition that "we're waiting on Travelers to – pay the depreciation." ECF No. 46-2 at 18. The affidavit and deposition testimony are opinions about Natureview's obligations, not evidence of facts. Because these opinions are solely grounded in the contract, they are insufficient to create a genuine issue of material fact.

B

Natureview requests $502,942.00 (described in the appraisal panel's clarification) to replace undamaged siding on the north and east elevations of Natureview's buildings.[6] However, the parties disagree over how to interpret the appraisal panel's clarification. Travelers contends that "[the] panel intentionally and expressly excluded those costs from the Award," ECF No. 53 at 13, because "Natureview did not have matching siding before the storm, and there was no basis to give it matching siding after the storm," *id.* at 13–14. According to Travelers, the appraisal panel's decision to not award matching for the north and east elevations was a factual determination to which this Court should defer. *Id.* at 14. Natureview counters that the appraisal panel "determine[ed] that the replacement siding was not a reasonable match for the existing siding on the north and east elevations and that,

---

[6] To be precise, Natureview seeks to recover $117,000 already spent on replacing undamaged siding and declaratory judgment "that it may recover up to $385,942.00 from Travelers for costs incurred to replace the remainder of the non-matching siding per page 2 of the Award." ECF No. 41 at 7.

14

if matching applies under the Policy, then the RCV for replacement of the non-matching siding is $502,942.00." ECF No. 41 at 12. In other words, Natureview interprets the clarification as awarding matching contingent on a court's subsequent coverage determination.

An appraisal award is ambiguous if it "is 'reasonably susceptible of more than one interpretation.'" *Herll v. Auto-Owners Ins.*, 879 F.3d 293, 296 (8th Cir. 2018) (quoting *Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997)). And the parties agreed at oral argument that both interpretations would be within the authority of the appraisal panel under the Minnesota Supreme Court's decision in *Quade v. Secura Insurance*, 814 N.W.2d 703, 706–08 (Minn. 2012). Therefore, summary judgment should be denied if both parties' interpretations of the appraisal panel's clarification are reasonable. *Herll*, 879 F.3d at 296; *see also Maplebrook Ests. Homeowner's Ass'n, v. Hartford Fire Ins. Co.*, No. 21-cv-1532 (SRN/DJF), 2023 WL 5021164, at *10 (D. Minn. Aug. 7, 2023).

Start with the language supporting Travelers' interpretation. The memorandum of appraisal directed the appraisal panel to "evaluate the extent of the mismatch between the undamaged area of the building component and the new material used for the repairs taking into account the existence of prior repairs and/or mismatches." ECF No. 48-16 at 3. The appraisal panel's itemized award included matching for the south elevation but did not include matching for the north and east elevations. ECF No. 51-2 at 2–3. And the appraisal panel's clarification begins with, "[t]he dollar amounts indicated on this page are not a part of the award and relate to the issues of matching." ECF No. 51-2 at 2. Taken collectively,

15

it is reasonable to interpret the appraisal panel's decision as awarding matching for only the south side because of a pre-existing mismatch.

However, the panel also wrote that "[t]he remaining undamaged original siding on the east and north elevations has a replacement cost of $502,942.00 and an ACV or [sic] $0.00." ECF No. 51-2 at 2. And at the top of the page, the appraisal panel emphasized that it "did not define coverage." *Id.* Because replacement cost is a term of art used to describe the amount of loss, Natureview's interpretation—that the appraisal panel calculated the amount of the loss ($502,942.00) contingent on a court's coverage decision—is also reasonable. Because both interpretations are reasonable, the appraisal panel's clarification is ambiguous, and the parties' motions for summary judgment will be denied as to matching.[7]

C

Natureview requests pre-award interest. "Minn. Stat. § 549.09 provides for preaward interest on insurance appraisal awards regardless of the existence of wrongdoing." *Poehler v. Cincinnati Ins.*, 899 N.W.2d 135, 141 (Minn. 2017). The statute provides for pre-award interest starting from the earliest of three triggering events: "(1) the action being commenced, (2) arbitration being demanded, or (3) written notice of the claim being made (provided that the party commences the action within two years after giving written notice)." *Sela*, 455 F. Supp. 3d at 867. Because insurance appraisals are not

---

[7] The appraisal panel's May 2022 email does not resolve the ambiguity. The email states that "[i]tem 4 indicates an RCV amount of $502,942 RCV for complete replacement of the North and East elevations if matching is considered." ECF No. 55-3 at 4. But the phrase "if matching is considered" could support either party's interpretation.

16

arbitration proceedings, a demand for an appraisal is not a triggering event for pre-award interest under § 549.09. *Elm Creek Courthome Ass'n v. State Farm Fire & Cas. Co.*, 971 N.W.2d 731, 742 (Minn. Ct. App. 2022), *review denied* (May 17, 2022).

Travelers contends that "Natureview is not entitled to interest on the ACV amount because it did not bring a cause of action within two years of its written notice of claim and no other statutory triggering event applies." ECF No. 45 at 24. Natureview counters that "[n]othing in the statute restricts a party to only one written notice." ECF No. 54 at 10. On that basis, Natureview contends that its August 2020 proof of loss is a written notice of claim under § 549.09.

Natureview's interpretation is not reasonable considering the two-year limitation period in § 549.09. "[A] particular provision of a statute cannot be read out of context but must be taken together with other related provisions to determine its meaning." *In re Est. of Nelson*, 936 N.W.2d 897, 905 (Minn. Ct. App. 2019) (quoting *Kollodge v. F. & L. Appliances, Inc.*, 80 N.W.2d 62, 64 (Minn. 1956) (quotations omitted)). To accomplish this, Minnesota courts read statutes as a whole. *Am. Fam. Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000). Section 549.09 requires "[t]he action [to] be commenced within two years of a written notice of claim for interest to begin to accrue from the time of the notice of claim." Minn. Stat. § 549.09, subdiv. 1(b). Allowing subsequent communication, demand letters, and settlement offers all to be successive written notices of claims would read this two-year limitation period out of the statute.

A common-sense reading of the statute confirms that Natureview's 2020 proof of loss was not a written notice of claim. Although § 549.09 does not define a written notice

17

of claim, in *Blehr v. Anderson* the Minnesota Court of Appeals concluded that a written notice of claim "does not require a demand for a specific amount of money; but the written notice must be sufficient, in light of the circumstances known to the noticed party, to allow the noticed party to determine 'its potential liability from a generally recognized objective standard of measurement.'" 955 N.W.2d 613, 622 (Minn. Ct. App. 2021) (quoting *Indep. Sch. Dist. 441 v. Bunn-O-Matic Corp.*, No. C0-96-594, 1996 WL 689768, at *10 (Minn. Ct. App. Dec. 3, 1996)). Often this is satisfied by the insured initiating the claims process. *See Creekview of Hugo Ass'n v. Owners Ins.*, 386 F. Supp. 3d 1059, 1068 (D. Minn. 2019); *Sela*, 455 F. Supp. 3d at 868.

Here, Natureview reported a claim to Travelers on August 6, 2019. ECF No. 49 ¶ 5. Consistent with *Blehr*, Natureview's report functioned as a written notice of claim under § 549.09. Meanwhile, the proof of loss was not intended to be, nor did it operate as, a written notice of claim. Having received a written notice of claim in August 2019, Travelers was already on notice of Natureview's claim. *See Notice*, Black's Law Dictionary (11th ed. 2019) ("Legal notification required by law or agreement, or imparted by operation of law as a result of some fact."). So the proof of loss did not function to provide notice of Natureview's pre-existing claim. Nor did Natureview intend to provide notice of its claim, considering that it provided the proof of loss at Travelers' request to proceed with the appraisal process. It makes no difference that the proof of loss and final estimate were for a different amount than Natureview's earlier estimates—the same claim was at issue. Because the proof of loss was sent after more than a year of back and forth between Natureview and Travelers, the proof of loss cannot fairly be understood to be a

written notice of Natureview's insurance claim. *Cf. Dewey Hill III Townhomes Ass'n, Inc. v. Auto-Owners Ins. Co.*, No. A18-1562, 2019 WL 3000691, at *1, *3 (Minn. Ct. App. July 1, 2019) (applying the two-year limitation period without mentioning the importance of the "considerable back-and-forth" between the parties).

The only triggering event left is the date Natureview filed this action. But Travelers paid the ACV awarded by the appraisal panel before Natureview filed this action. And interest is not owed on the recoverable depreciation because Natureview is not entitled to any recoverable depreciation. Nor can interest be awarded on matching costs because Natureview's motion for summary judgment as to matching costs will be denied. Therefore, Natureview is not entitled to pre-award or pre-judgment interest.

\*

The loose end is how the case proceeds with respect to the matching issue. "Minnesota Supreme Court, Eighth Circuit, and U.S. Supreme Court precedent tend to show that **ambiguous** appraisal awards should be returned to the appraisal panel for clarification." *Fenske v. Integrity Prop. & Cas. Ins.*, No. 22-cv-679 (JRT/DJF), 2023 WL 186595, at *3 (D. Minn. Jan. 13, 2023); *see also Maplebrook*, 2023 WL 5021164, at *12 ("The ambiguity in the Appraisal Award requires its remand to the appraisal panel for clarification."). At the hearing, the parties also discussed deposing members of the appraisal panel or proceeding to trial. As described more fully below, the parties will be ordered to meet and confer on this issue to determine whether they are able to agree on an appropriate procedure for resolving the matching question.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendant The Travelers Indemnity Company's Motion for Summary Judgment [ECF No. 43] is **GRANTED IN PART** and **DENIED IN PART** as explained in Part III above.

2. Plaintiff Natureview Vista Twinhome Association's Motion for Partial Summary Judgment [ECF No. 39] is **DENIED**.

3. The parties are **DIRECTED** to meet and confer regarding how this case should proceed to resolve the matching issue. The parties shall file a joint status report by **May 6, 2024**.

4. If the parties disagree about how to proceed, either party may move to submit this matter to the appraisal panel for clarification, to re-open discovery, or for any other appropriate relief by **May 20, 2024**.

Dated:  April 22, 2024               s/ Eric C. Tostrud
                                     Eric C. Tostrud
                                     United States District Court